# United States Bankruptcy Court
# District of Maryland
### At Greenbelt

| | | |
|---|---|---|
| IN RE: | * | Case No: 16-25654 |
| | * | |
| | * | Chapter 13 |
| **TIFFANY LAGENIA NOELS** | * | |
| | * | |
| Debtor | * | |

*********************************************************************

| | |
|---|---|
| **Deutsche Bank National Trust Company,** * | |
| **As Trustee For Novastar Mortgage** * | |
| **Funding Trust, Series 2006-4 Novastar** * | |
| **Home Equity Loan Asset-Backed** * | |
| **Certificates, Series 2006-4,** * | |
| **Successors and Assigns** * | |
| * | |
| Movant * | |
| * | |
| v. * | |
| * | |
| **TIFFANY LAGENIA NOELS** * | |
| * | |
| Respondent * | |
| * | |

### DEBTOR'S MOTION FOR RELIEF FROM ORDER GRANTNG MOVANT'S MOTION FOR RELIEF FROM AUTOMATIC STAY AS TO REAL PROPERTY COMMONLY KNOWN AS 1214 IRON FORGE RD., DISTRICT HEIGHTS, MD 20747

Now comes, Tiffany Noels, the Debtor, by and through her attorney Marie Lott Pharaoh, who hereby moves this Honorable Court under Bankruptcy Rule 9024, Rule 60(b) of the Federal Rules of Civil Procedure, and 11 U.S.C.§105(a) to reconsider its Order granting the Movant's Motion for Relief from the Automatic Stay, and states the following in support:

1. The above named Debtor filed a Chapter 7 Petition in Bankruptcy with this Court on November 29, 2016, which converted to a Chapter 13 on April 3, 2017

2. That the Bankruptcy Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 157 and § 1334 and 11 U.S.C. § 362; Federal Rule of Bankruptcy Procedure 9014; 11 U.S.C. §105(a). This matter is a core proceeding.

3. The Debtor and Ocwen, who purports to be the servicer of the promissory note on behalf of Deutsche Bank National Trust Company, as Trustee For Novastar Mortgage Funding Trust, Series 2006-4, Novastar Home Equity Loan Asset-Backed Certificates, Series 2006-4, entered into a loan modification agreement (hereinafter "Agreement') on or about August 4, 2012.

4. Said Agreement is included in the Movant's Motion to Lift Stay exhibits – pages 28-35 -, (*Doc#69*) and is part and parcel of Movant's proof of claim. *Claim 2-1*.

5. The Movant, moreover, relies on this Agreement as the basis for moving this Honorable Court to lift the automatic stay as proof that the Debtor is delinquent on her mortgage payments to the Movant under said Agreement.

6. Not presented to this Court, however, is that that the Agreement is void due to an error recognized by Ocwen in the terms of the Agreement.

7. Mr. Matthew Perry acknowledged in an email colloquy between Debtor and Mr. Perry on January 27, 2015, that Ocwen had indeed made a mistake regarding the mortgage terms:

> As a result of the errors made when the loan was modified in August 2012, Ocwen has removed the $8,107.32 from the deferred principal balance and has credited $222.00 towards the escrow account. Additionally, we will write off the non-interest bearing principal deferment in the amount of $14,592.68 which would have remained at maturity of the loan, write off the August and September 2014 payments in the amount of $655.50 each, and October 2014, November 2014, December 2014, and January 2015 payments in the amount of $621.28 each. Should the loan continue to receive on time payments, not exceeding 90 days or three (3) monthly payments delinquent, the loan will qualify for the remaining $39,287.78 principal deferment forgiveness leaving $0.00 remaining of non-interest bearing principal deferment.

*Exhibit 1*.

8. Paragraph L of the Agreement states in part: "If an error in the terms hereof is detected after execution of this Agreement, you understand that a corrected Agreement will be provided to you and this Agreement will be void upon notice of such error. Should you elect not to sign any such corrected Agreement, your loan will revert to the terms of your original Loan Documents."

9. According to the wording of the Agreement, the aforementioned errors void the Agreement.

10. No ambiguity presents itself as to this Agreement being void: The language in paragraph L of the Agreement is plain and clear.

11. And it is the nature of this language that should prevail in any analysis of the meaning of the language in Paragraph L:

> A court construing an agreement under [the objective theory] must first determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated. In addition, when the language of the contract is plain and unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed. In these circumstances, the true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant.

*Dennis v. Fire & Police Employees Ret. Sys.,* 390 Md. 639, 656-57, 890 A.2d 737, 747 (2006) (quoting *General Motors Acceptance v. Daniels,* 303 Md. 254, 261, 492 A.2d 1306, 1310 (1985) (internal quotations omitted)).

12. It is clear that the language in Paragraph L of the Agreement renders the Agreement void.

13. As such, "'A void contract is `not a contract at all' ... and all parties, present and future, would be equally allowed to avoid the contract." *Julian v. Buonassissi,* 414 Md. 641, 666, 997 A.2d 104 (2010) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 7 cmt. a (1981)).

14. The Debtor goes one step further in asserting that not only is the Agreement void, but that Ocwen, as agent for the Movant, has also breached the Agreement because it did not provide Debtor with an amended Agreement.

15. Again the language in Paragraph L is unambiguous: "you [Debtor] understand that a corrected Agreement will be provided to you and this Agreement will be void upon notice of such error."

16. Ocwen was obligated to provide the Debtor with a corrected Agreement, evidencing the wording in the email from Mr. Perry.

17. The language in Paragraph L is not permissive, but is mandatory. *Moss v. Director,* 279 Md. 561, 564-65, 369 A.2d 1011, 1013 (1977)( "It is now a familiar principle of statutory

construction in this State that use of the word 'shall' is presumed mandatory unless its context would indicate otherwise.")

18. The use of "will" versus "shall" does not change the mandatory nature of the paragraph. (Traditionally, under English grammar usage "shall" is used with the first person singular and plural (I, we), whereas, "will" is used with the second singular and plural (you) and third persons singular and plural (she, he, it, they).
19. Furthermore, the Debtor was not under any obligation to pay under the void Agreement.
20. In fact, had she done so, it would have been to her detriment.
21. The law is clear: A party can ratify a contract by failing to "act to repudiate the agreement promptly," "by continuing to act in accordance with the contract, or by continuing to accept or claim benefits flowing from it." *Blum v. Blum,* 59 Md. App. 584, 594-95 (1984)
22. Upon Ocwen acknowledging the error, Debtor, by not paying the mortgage payments under the voided Agreement, repudiated the Agreement: she neither accepted nor claimed any benefits accruing to her under the Agreement.
23. Therefore, the Movant has not presented to this Court a viable, legally enforceable Agreement that commits the Debtor to paying the Movant the mortgage payments alleged.
24. Accordingly, the Order should be vacated and the automatic stay reinstated.

**WHEREFORE,** Debtor prays that this Honorable Court grant her the requested relief and vacate the Order granting Movant's Motion to Lift Stay, attorney's fees and any other relief this Honorable Court deems just and proper.
.

Date: September 19, 2017                                Respectfully submitted,


/s/ Marie Lott Pharaoh
Marie Lott Pharaoh 11080
16029 Dorset Road
Laurel, Maryland 20707
(240) 606-3494 Phone
(240) 536-9157 Fax
mariepharaoh@lawfirmmail.com